**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

TAURUS B.,

        **Plaintiff,**

  v.

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

        **Civil Action 3:25-cv-145**
        **Judge Walter H. Rice**
        **Magistrate Judge Kimberly A. Jolson**

## REPORT AND RECOMMENDATION

Plaintiff, Taurus B., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff protectively filed his application for SSI on June 15, 2015, alleging that he was disabled beginning January 1, 2012, due to gastroparesis, Bi-polar disorder, a "bad disc in back," and fibromyalgia. (R. at 293–98, 316). After his application was denied initially and on reconsideration, Administrative Law Judge (the "ALJ") Belinda J. Brown ("ALJ Brown") heard the matter on April 17, 2018. (R. at 64–90). Ultimately, ALJ Brown denied benefits in a written decision on June 21, 2018. (R. at 118–35). The Appeals Council granted review. (R. at 136–40). Following another hearing, ALJ Brown again denied benefits on December 3, 2019. (R. at 9–29).

After the Appeals Council denied review, Plaintiff filed a case in the United States District Court for the Southern District of Ohio. This Court remanded the case to the Commissioner. *See*

*[Taurus B.]  v. Comm'r of Soc. Sec.*, No. 3:20−cv−438 (S.D. Ohio April 6, 2022).  (R. at 1913–24).  Next, the matter was remanded by the Appeals Council.  (R. at 1946–49).  While that claim was pending appeal, Plaintiff filed a subsequent application for benefits on November 25, 2020.  (R. at 1750, 1928–40, 1946–49).

After the Appeals Council consolidated the claims, another hearing was held with ALJ Monica LaPolt, who denied Plaintiff's application on January 30, 2023.  (R. at 1952–81).  The Appeals Council granted review (R. at 1982–88), and Plaintiff was granted another hearing with ALJ Nicholas J. Schwalbach ("ALJ Schwalbach").  (R. at 1809–50).  ALJ Schwalbach denied benefits in a written decision on May 15, 2024.  (R. 1747–1808).

Plaintiff filed suit with this Court on May 6, 2025 (Doc. 1), and the Commissioner filed the administrative record on July 7, 2025 (Doc. 7).  The matter has been briefed and is ripe for consideration.  (Docs. 10, 15, 16).

### A.      Relevant Hearing Testimony and Medical Evidence

In his opinion, ALJ Schwalbach summarized Plaintiff's hearing testimony from the April 16, 2024, hearing and Plaintiff's medical records and symptoms.  (R. at 1763–82).  The ALJ also summarized and evaluated the medical source opinions and prior administrative medical finding.  (R. at 1782–92).  Rather than repeat these summaries, the Court will focus on the evidence pertinent to Plaintiff's assigned errors below.

### B.      The Most Recent ALJ's Decision

The ALJ found that Plaintiff has not engaged in substantial gainful activity since June 15, 2015, the application date.  (R. at 1754).  The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease; left cubital tunnel syndrome; left carpal tunnel syndrome; GERD; gastroparesis; a depressive disorder; an anxiety disorder; and alcohol

abuse.  (*Id.*).  The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment.  (R. at 1756).

As to Plaintiff's residual functional capacity ("RFC"), ALJ Schwalbach opined:

[Plaintiff] has the residual functional capacity to perform light work, as defined in 20 CFR 416.967(b), except he is limited to frequent reaching with the left upper extremity with occasional handling and fingering with the left upper extremity. The claimant is limited to no climbing of ladders, ropes, or scaffolds with frequent balancing as defined by the Selected Characteristics of Occupations (SCO) and climbing of ramps and stairs. He is limited to occasional stooping, kneeling, crouching, and crawling. He is limited to indoor work only with ready access to a restroom, but he would be off-task less than ten percent of the time. He is able to understand, remember, and carry out simple instructions and perform routine tasks. He is able to use judgment to make simple, work-related decisions. He is able to perform goal-oriented work, such as an office cleaner, but he is unable to perform at a production-rate pace, such as assembly line work or other jobs requiring fast paced production requirements. He is limited to occasional superficial contact with coworkers and supervisors with "superficial contact" defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice. He is limited to no teamwork, tandem tasks, or contact with the public as part of job duties. He is limited to occasional changes in an otherwise routine work setting with those changes explained in advance to allow time for adjustment to new expectations. He is limited to jobs with no ready access to drugs or alcohol such as spirits.

(R. at 1759).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (R. at 1764).

The ALJ found that Plaintiff has no past relevant work.  (R. at 1793).  Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform light exertional, unskilled jobs that exist in significant numbers in the national economy, such as copy machine operator, and inspector, leather products.  (R. at 1793–94).  He therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since June 15, 2015, the

date the application was filed (20 CFR 416.920(g)).” (R. at 1794).

## II.   STANDARD OF REVIEW

The Court's review “is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.” *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). “[S]ubstantial evidence is defined as ‘more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'” *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must “take into account whatever in the record fairly detracts from [the] weight” of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13–cv–1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.   DISCUSSION

Plaintiff contends that the ALJ erred by failing to follow Social Security Ruling 16-3p. (Doc. 10 at 5–8). Plaintiff also argues that the ALJ erred in evaluating the medical experts' testimony. (*Id.* at 8–10). The Commissioner counters that the ALJ properly relied upon Plaintiff's conservative medical treatment in evaluating his subjective allegations. (Doc. 15 at 3–5). And, says the Commissioner, substantial evidence supports how the ALJ analyzed the medical experts' opinions. (*Id.* at 5–8).

### A.   Intensity, Persistence, and Limiting Effects of Plaintiff's Symptoms

Plaintiff first takes aim at the ALJ's evaluation of Plaintiff's symptoms. (Doc. 10 at 5). Specifically, he alleges the ALJ impermissibly relied on Plaintiff's noncompliance with treatment

and medications without considering the reasons for his noncompliance in finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were inconsistent with the record evidence. (*Id.*).  The ALJ's opinion shows otherwise.

When a plaintiff alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. § 404.1529 Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, *3 (March 16, 2016).[1]  First, the ALJ must determine whether the individual has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged.  Next, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  *See also* 20 C.F.R. § 404.1529(c)(3).  The ALJ is not required to analyze all seven factors but must still show that he considered the relevant evidence.  *Roach v. Comm'r Soc. Sec.*, No. 1:20-cv-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021).

---

[1] Soc. Sec. R. (SSR) 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms," superseded SSR 96-7p and became applicable to decisions issued on or after March 28, 2016.  *See* SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (clarifying applicable date of SSR 16-3p). *See also Royster v. Commisioner of Soc. Sec.*, No. 2:20-CV-3128, 2021 WL 1903910, at *3 (S.D. Ohio May 12, 2021) ("SSR 96-7p has been replaced, however, by Social Security Ruling 16-3p, which applies to decisions, like the one at issue here, rendered on or after March 28, 2016.")*, report and recommendation adopted sub nom. Royster v. Comm'r of Soc. Sec.*, No. 2:20-CV-3128, 2021 WL 3169302 (S.D. Ohio July 26, 2021).

Relatedly, in considering an individual's statements describing the intensity and persistence of symptoms, Social Security Ruling (SSR) 16-3p provides:

> We will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities for an adult . . .
>
> In contrast, . . . if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. When we consider the individual's treatment history, we may consider . . .
>
> - An individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms . . . [and]
>
> - An individual may not be able to afford treatment and may not have access to free or low-cost medical services[.]

SSR 16-3p.  Put differently, an ALJ may consider a plaintiff's noncompliance with treatment so long as the ALJ considers reasons why that plaintiff did not comply.  *Id.*; *see also* 20 C.F.R. § 416.929(c)(3)(iv) (providing the agency will consider a claimant's course of treatment when evaluating symptoms).

In the end, the ALJ's assessment of an individual's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247.  Nonetheless, it remains the ALJ's province to assess the consistency of subjective complaints about the impact of a plaintiff's symptoms with the record as a whole.  *See id.*  Therefore, "absent a compelling reason," an ALJ's credibility determination will not be disturbed.  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001); *see also Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (noting an ALJ's credibility findings are "virtually 'unchangeable'" (citation omitted)).

In considering the record, the ALJ attended to Plaintiff's testimony and the medical evidence about his symptoms in depth.  Among other things, the ALJ considered that in 2018, Plaintiff testified that his gastroparesis caused him to vomit or need to use the restroom any time he ate or drank, and his medications made him feel sick.  (R. at 1760–61 (citing R. at 2014); *see also* R. at 1761 (noting that Lyrica made Plaintiff's vision blurry)).  Additionally, Plaintiff had endoscopies and colonoscopies but no surgeries, and he was unable to complete a gastric emptying study due to vomiting.  (R. at 1761 (citing R. at 2022, 2029)).  He claimed he was told to stop going to the hospital for his stomach because it "cut down on his insurance and made him unable to see other providers."  (*Id.* (citing R. at 2029)).  He testified to experiencing pain all over his body, and though he had some injections, he stopped wanting them.  (*Id.* (citing R. at 2022)).  By 2019, Plaintiff believed that none of his medication helped with pain or cramping, and his pain was a 10/10 all day, every day, even with medication.  (R. at 1762 (citing R. at 2050)).  He also testified that he was not taking medication for his mental health at that time.  (*Id.* (citing R. at 2054)).  In 2022, Plaintiff denied a report that he refused to comply with his gastrointestinal specialist's orders, claiming that he temporarily stopped his medication because he had trouble keeping food down.  (R. at 1763 (citing R. at 1864–66).  He additionally reported several negative medication side effects.  (*Id.* (citing R. at 1867)).  As for 2024, Plaintiff again testified that he was unable to complete a gastric emptying study or a colonoscopy due to vomiting.  (R. at 1764 (citing R. at 1817)).  He stated he was only able to take liquid medication when vomiting.  (*Id.* (citing R. at 1818)).  He experienced back pain, but he did not engage with treatment because he was "tired of needles, and he had no improvement with physical therapy."  (*Id.* (citing R. at 1819–20)).

The ALJ then found that though Plaintiff has a history of pain and related symptoms, the record does not support symptoms as intense, persistent, or limiting as alleged.  (R. at 1764).  In

making this finding, the ALJ considered Plaintiff's medical treatment related to his pain.  Relevant to Plaintiff's assigned error, the ALJ found that in 2016 physical therapy improved Plaintiff's back pain and mobility, but he was discharged following noncompliance with appointments.  (R. at 1765 (citing R. at 1156–60, 1175–76)).  The ALJ also found evidence of pain improvement in 2018 with physical therapy despite Plaintiff's noncompliance with a home exercise program.  (R. at 1766 (citing R. at 1649–50)).  The ALJ noted that stretching helped with Plaintiff's discomfort and he refused treatment from pain management.  (R. at 1767 (citing R. at 2505)).  And in 2020, Plaintiff reported physical therapy was "too much" because it worsened his pain.  (*Id.* (citing R. at 2514)).  The ALJ considered that in 2021, Plaintiff took ibuprofen for his pain, but he was not on medication for fibromyalgia.  (*Id.* (citing R. at 2522)).  That same year, a consultative examiner noted Plaintiff had not been hospitalized for low back pain or had been to the emergency room for musculoskeletal complaints.  (R. at 1767–68 (citing R. at 2640)).  A 2024 examination of Plaintiff's low back revealed tenderness, but he had normal motor sensory tests.  (R. at 1769 (citing R. at 3525)).

The ALJ also considered Plaintiff's extensive medical records related to his gastrointestinal impairments.  The ALJ catalogued Plaintiff's years-worth of appointments and examinations related to vomiting, diarrhea, abdominal pain, and weight loss.  (R. at 1769–76).  In doing do, the ALJ noted several examinations and tests related to Plaintiff's abdomen, pancreas, and bowels that showed normal or mild results.  (*See, e.g.,* R. at 1770 (citing R. at 453, 464, 469, 492, 541), 1771 (citing R. at 850, 1149–50), 1772 (citing R. at 1207, 1399, 1426), 1773 (citing R. at 1582, 1586, 1596), 1774 (citing R. at 1501, 1709, 1728, 2387, 2483), 1775 (citing R. at 2641)).  While the ALJ acknowledged Plaintiff experienced vomiting, nausea, and weight loss, his BMI was consistently in the normal range.  (*See, e.g.*, R. at 1770 (citing R. at 464), 1772 (citing R. at 1207, 1211, 1453),

1773 (citing R. at 1449), 1774 (citing R. at 2372), 1775 (citing R. at 2641, 3361, 3367)).  The ALJ noted that Plaintiff refused a proton pump inhibitor because he thought it would cause cancer, refused a gastric emptying study because of vomiting, and refused an EGD because of required COVID-19 testing.  (R. at 1774–75 (citing R. at 2481, 2722, 2747, 2764–75, 3367)).  The ALJ noted times when Plaintiff was only partially compliant with medication.  (*See, e.g.*, R. at 1775 (citing R. at 3357)).  The ALJ highlighted when Plaintiff denied taking psychiatric medication because he kept throwing them up.  (R. at 1782 (citing R. at 3465)).

The ALJ further considered that throughout the record, Plaintiff failed to follow-up with gastroenterology or psychology specialists.  (R. at 1771–72 (citing R. at 848), 1776 (citing R. at 3435), 1781 (citing R. at 3291)).  The ALJ found missed doctor appointments and medication refills.  (*See, e.g.*, R. at 1774 (citing R. at 2384)).  Still, the ALJ acknowledged at times Plaintiff did not have insurance to cover medication, to cover tests requested by gastroenterology, or to follow-up with his providers.  (R. at 1769–70 (citing R. at 416, 430), 1772 (citing R. at 1451)).

Throughout his analysis, the ALJ made several determinations:

[Plaintiff's] physical examinations and treatment history despite noncompliance continued to demonstrate better functioning than alleged.***

Overall, the record does not support pain and related symptoms as intense, persistent, or limiting as alleged. The claimant was treated conservatively and consistently presented with adequate strength and range of motion with rare notations of use of an assistive device. Imaging and other objective studies indicated no more than moderate abnormalities.***

[W]hile there was some weight loss prior to the alleged onset date, his condition stabilized, and he demonstrated adequate strength and laboratory findings despite his complaints of related fatigue and weakness, which does not support symptoms as intense, persistent, or limiting as alleged.***

Noncompliance with treatment, along with a stable weight and usually no more than mild tenderness to palpation of the abdomen is not consistent with symptoms or limitations as severe as alleged.***

> [Plaintiff's] stable weight with some weight gain throughout the almost decade under review, physical examinations usually reflecting no more than mild tenderness to palpation, generally unremarkable laboratory findings and diagnostic findings, as well as noncompliance with treatment and testing does not support symptoms as intense, persistent, or limiting as alleged even when considering the effects of his substance abuse on his gastrointestinal complaints.

(R. at 1767, 1769, 1771, 1772, 1776).  As the discussion above shows, these determinations are supported by substantial evidence.

Still, Plaintiff contends that the ALJ's decision contravenes SSR 16-3p.  He says that the ALJ could not rely, even in part, on Plaintiff's noncompliance with treatment when the ALJ also acknowledged reasons that Plaintiff did not comply, such as insurance issues and medication side effects.  (Doc. 10 at 7–8).  Plaintiff misreads both the law and the ALJ's opinion.  First, the regulations make clear that if the ALJ finds a plaintiff's noncompliance with treatment to be inconsistent with his subjective complaints, the ALJ must consider the possible reasons for why the plaintiff did not comply.  As noted above, the ALJ did so—considering at various times that Plaintiff had insurance barriers, experienced treatment side effects, and vomited his medications.  (*See, e.g.*, R. at 1761–64, 1769–70, 1772).

The ALJ is not required, as Plaintiff suggests, to automatically rehabilitate Plaintiff's credibility merely because those "legitimate reasons" exist.  *Cf. Pye v. Saul*, No. 1:20-CV-0010, 2021 WL 800846, at *7 (M.D. Tenn. Feb. 2, 2021) ("It is perfectly within the ALJ's purview to base an adverse credibility finding on a claimant's noncompliance."), *report and recommendation adopted*, No. 1:20-CV-00010, 2021 WL 794956 (M.D. Tenn. Mar. 2, 2021).  Further, Plaintiff ignores the fact that the ALJ did not simply rely on Plaintiff's noncompliance with treatment in finding his symptoms were not as intense, persistent, or limiting as alleged.  The ALJ also discussed Plaintiff's improvements despite his noncompliance, his conservative treatment, his normal examination and imaging results, and his stable weight.  *Cf. Glenda L. A. v. Comm'r of*

10

*Soc. Sec.*, No. 3:22-cv-235, 2022 WL 18776106, at *6 (S.D. Ohio Dec. 28, 2022) (finding that even where the ALJ did not consider a plaintiff's reasons for declining treatment, the error was harmless because the ALJ relied on other record-based reasons why the plaintiff's statements were not fully supported), *report and recommendation adopted sub nom. Angel v. Kijakazi*, No. 3:22-CV-235, 2023 WL 2043243 (S.D. Ohio Feb. 16, 2023); *Kevin A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-307, 2023 WL 4545164, at *13 (S.D. Ohio July 14, 2023) (finding no error where the ALJ did not discount a plaintiff's symptom severity solely on his failure to seek treatment). All told, the ALJ's findings are grounded in substantial evidence, and Plaintiff's assignment of error is unavailing.

**B.      The ALJ's evaluation of the Medical Expert Opinion**

Next, Plaintiff draws attention to the April 16, 2024, hearing testimony of medical expert, James Washburn, D.O., and psychological expert, Michale Lace, Psy.D., and the RFC. According to Plaintiff, the ALJ gave partial weight to the testimony of these experts but impermissibly omitted some of their conclusions from the RFC without proper explanation. (Doc. 10 at 9–10).

For claims filed before March 27, 2017, social security regulations recognize several different types of medical sources: Treating physicians and psychologists, non–treating yet examining physicians and psychologists, and non–treating/record–reviewing physicians and psychologists. *Gayheart v. Comm'r Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *see also* 20 C.F.R. § 416.927.

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats [Plaintiff] (a "treating source") is afforded more weight than that from a source who has examined [Plaintiff] but does not have an ongoing treatment relationship (a "nontreating source"). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the

11

source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Gayheart*, 710 F.3d at 375 (citations omitted).  An ALJ's "RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96–8p, 1996 WL 374184 at *7 (July 2, 1996).

> ### 1.     *Medical expert James Washburn, D.O.*

Turning first to Dr. Washburn.  Relevant here, at the disability hearing, Dr. Washburn testified that Plaintiff's severe impairments included gastrointestinal issues, including GERD and possible gastroparesis.  (R. at 1828).  He noted that while the vomiting was "severe," he did not have a specific diagnosis due to Plaintiff's failure to complete the gastric emptying study and lack of diabetes.  (R. at 1828–29, 1833).  Dr. Washburn also testified that Plaintiff's gastrointestinal problems are complicated by alcohol use.  (R. at 1828).  Dr. Washburn opined that Plaintiff did not meet any listings, including the gastrointestinal listings.  (R. at 1829–30).

Dr. Washburn found that Plaintiff would be limited to lifting and carrying twenty pounds occasionally and ten pounds frequently; occasional handling, fingering, and feeling on the left; no climbing of ladders or scaffolds or exposure to unprotected heights as hazards; occasional stooping, kneeling, crouching, and crawling.  (R. at 1830–31).  He also opined that the only gastrointestinal limits would be related to absenteeism or off-task time, but there was no way for him to know how much that would be.  (*Id.*; *see also* R. at 1833–34 (noting the number of breaks due to vomiting would be variable but "there's no way for [Dr. Washburn] to quantitate that")).  Dr. Washburn further noted that reflux medication can cause diarrhea, and gabapentin can cause fatigue, but most of Plaintiff's gastrointestinal medication had minimal side effects.  (R. at 1834).

Dr. Washburn noted that the mild muscle relaxers prescribed are not generally sedating.  (R. at 1835).

> The ALJ afforded Dr. Washburn's opinion "some weight," further explaining:
>
> Though Dr. Washburn does not have a treating or examining relationship with [Plaintiff], he is familiar with the regulations and reviewed the evidence in the record available to him, and he supported his opinion with citations to the record. His opinion is somewhat consistent with diagnostic imaging and physical examinations. For example, [Plaintiff] usually presents with no more than slight reductions in strength and relatively good range of motion, and there are only rare notations of use of a cane . . . Imaging studies demonstrates some degenerative changes, but they are no more than moderate . . . . Such findings are consistent with an ability to perform a reduced range of light work as opined. His EMG findings support the manipulative limitations opined (e.g. Exhibit 63F/35). A limitation to light work addresses any complaints of fatigue or pain associated with his gastrointestinal impairments; however, the record supports additional restrictions to address the totality of his gastrointestinal symptoms, including ready access to a restroom. Nevertheless, his noncompliance with testing and treatment, along with his relatively steady weight and generally unremarkable laboratory findings throughout the period under review, demonstrates he will be off-task for his gastrointestinal complaints less than ten percent of the day (Exhibits 1F-71F). As such, the opinion of Dr. Washburn is afforded some weight.

(R. at 1784–85).

Plaintiff argues that the ALJ excluded some of Dr. Washburn's proposed limitations from the RFC without explanation, despite giving his testimony "some weight."  (Doc. 10 at 9–10). Particularly, he says the ALJ did not address Dr. Washburn's testimony that Plaintiff's vomiting may require breaks, and that Plaintiff's medications could cause fatigue.  (*Id.* at 10).  The Undersigned finds each argument unpersuasive.

As mentioned, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996).  Nevertheless, an ALJ is not required to explain "every omitted restriction from a non-treating physician's opinion."  *Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016); *Myers v. Comm'r of Soc. Sec.*, No. 2:19-CV-2060, 2019 WL 7046408, at *7 (S.D. Ohio

Dec. 23, 2019) (finding the ALJ did not need to explain why he excluded the non-treating physician's limitation of superficial interactions), *report and recommendation adopted*, No. 2:19-CV-2060, 2020 WL 880778 (S.D. Ohio Feb. 21, 2020); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Although the ALJ gave great weight to Dr. Torello's opinion, he was not required to incorporate the entirety of her opinion, especially those findings that are not substantially supported by evidence in the record."); *Mason v. Comm'r of Soc. Sec.*, No. 1:18 CV 1737, 2019 WL 4305764, at *10 (N.D. Ohio Sept. 11, 2019) (finding that the ALJ was not required to adopt all of the non-treating source's limitations).

Here, the ALJ acknowledged Dr. Washburn's testimony that Plaintiff may have gastrointestinal limits related to absenteeism or off-task time. (R. at 1784). But the ALJ also mentioned Dr. Washburn's testimony that there was no way to know how much time that would be. (*Id.*). Even without a specific opinion, the ALJ found restrictions related to Plaintiff's gastrointestinal symptoms were appropriate and, based on the record, found Plaintiff would be off-task less than ten percent of the day. (R. at 1785). The Undersigned concludes this is an adequate explanation concerning an off-task limitation. To the extent Plaintiff finds fault that the ALJ did not further attend to Dr. Washburn's vague testimony that breaks would be "variable," the ALJ was not required to explain every omitted restriction from a non-treating physician's opinion.

Similarly, the ALJ discussed Dr. Washburn's testimony that Plaintiff's reflux medication can cause fatigue. (R. at 1784). Still, the ALJ highlighted Dr. Washburn's testimony that "most of [Plaintiff's] gastrointestinal medication had minimal side effects, and the mild muscle relaxers prescribed generally are not sedating." (*Id.*). *Cf. Brewer v. Soc. Sec. Admin.*, 39 Fed. Appx. 252, 254 (6th Cir. 2002) ("It is not improper for an ALJ to reject testimony where the allegations are not supported by objective medical evidence."). Though Plaintiff clearly believes the ALJ's

14

consideration falls short, it is unclear what limitation the ALJ should have adopted. Plaintiff provides no specifics on this issue. (Doc. 10 at 10 (stating only "Dr. Washburn also testified that [Plaintiff's] 19 prescribed medications—including Gabapentin—could reasonably cause fatigue, which was also not properly addressed by the ALJ")). And indeed, the ALJ noted that Plaintiff's light work restriction adequately addressed complaints of fatigue or pain associated with his gastrointestinal impairments. (R. at 1784).

Ultimately, the ALJ sufficiently explained his treatment of Dr. Washburn's opinion. The Undersigned can adequately trace his reasoning, and his conclusions are supported by substantial evidence.

### 2. Psychological expert, Michael Lace, Psy.D.

Finally, the ALJ did not err when considering Dr. Lace's testimony. Dr. Lace testified that Plaintiff's severe impairments include depression, bipolar disorder, and generalized anxiety disorder, but PTSD was not a severe impairment. (R. at 1837). He had a history of alcohol abuse, but his cannabis use was in remission. (*Id.*). Dr. Lace testified that Plaintiff did not meet any listing. (R. at 1839). As to Plaintiff's functional limitations, Dr. Lace found Plaintiff had a mild limitation in understanding, remembering, or applying information; a moderate limitation in adapting or managing oneself; and mild to moderate limitations in interacting with others and maintaining concentration, persistence, or pace, which were treated as moderate limitations. He opined that Plaintiff was limited to work with no fast-paced production requirements; occasional interaction with coworkers, the general public, and supervisors; routine work with no major changes during the day; and work with low likelihood of access to alcohol. (R. at 1838–39).

The ALJ afforded Dr. Lace's opinion "some weight." (R. at 1787). The ALJ further explained:

15

Though Dr. Lace does not have a treating or examining relationship with [Plaintiff], he is familiar with the regulations and reviewed the evidence in the record available to him, and he supported his opinions with citations to the record. His opinion is only somewhat supported by and consistent with the record, which demonstrates a history of mental health treatment with some abnormalities on examination that are not work preclusive (Exhibits 1F-71F). For example, while there are rare notations of memory abnormalities, [Plaintiff] usually presented with intact memory (e.g. Exhibits 1F/16; 11F/5; 48F/8; 55F/116, 121, 143, 154, 162; 66F/8). Some treatment notes show poor insight and judgement, along with reports of hallucinations and delusions, particularly when abusing substances, but a number of his treatment records also reflect at least fair insight and judgment (e.g. Exhibits 1F/16; 11F/3; 49F/4; 55F/4, 21, 55, 116, 121, 128, 143, 154, 162; 66F/8). Though he was tangential and difficult to interrupt, he usually maintained good attention and concentration (e.g. Exhibit 11F/5; 48F/7; 66F/8). Behavior was variable, as he was sometimes argumentative, but he also demonstrated the ability to control his behavior as evidenced by a number of notations of normal and cooperative behavior with good eye contact (e.g. Exhibit 1F/16; 18F/1; 41F/6; 43F/3, 7; 49F/4; 55F/4, 21, 116, 128, 153; 64F/4; 70F/1). Such findings are consistent with an ability to perform work activity within the limitations opined. However, while Dr. Lace stated he accommodated [Plaintiff]'s occasionally argumentative nature, the undersigned added additional social restrictions in order to address [Plaintiff]'s social deficits. Additionally, in deference to the rare notations of memory complaints and allegations of forgetfulness, the undersigned found a moderate limitation in understanding, remembering, and applying information, warranting a restriction to simple, routine tasks. Thus, the undersigned gives some weight to Dr. Lace's opinion.

(*Id.*).

Plaintiff seems to take issue with the fact that the ALJ allegedly did not address Dr. Lace's opinion that Plaintiff could have angry outbursts and is sensitive to receiving criticism at work. (Doc. 10 at 10). But upon review of the record, Plaintiff overstates Dr. Lace's testimony. During the hearing, the ALJ asked Dr. Lace to discuss the record of Plaintiff's angry outbursts. Dr. Lace testified that those records contributed to Plaintiff's mild to moderate limitation in interacting with others and his limitation to no more than occasional interaction with co-workers, the general public, and supervisors. (R. at 1840). When Plaintiff's counsel asked about Plaintiff's sensitivity to receiving criticism, Dr. Lace testified that if the opined limitations in the RFC were adhered to, he "wouldn't see that being a major problem." (*Id.*). And when pressed, Dr. Lace opined that

16

explosive responses to criticism would not be typical, citing both Plaintiff's presentation a majority of the time during the disability hearing and Plaintiff's relatively normal mental status examinations. (R. at 1840–41). So, while Dr. Lace acknowledged the possibility that Plaintiff could experience angry outbursts or sensitively to criticism, his testimony was, at base, that the opined limitations adequately accounted for those possibilities.

Even more, the ALJ not only incorporated Dr. Lace's recommendations, he also heightened them. The ALJ first affirmed that Dr. Lace's opinion is consistent with the record, including evidence of "abnormalities that are not work preclusive." (R. at 1787). But then, the ALJ pointed out that while Dr. Lace "accommodated [Plaintiff's] occasionally argumentative nature, [the ALJ] added additional social restrictions in order to address [Plaintiff's] social deficits." (*Id.*).

Still, Plaintiff focuses on the ALJ's determination that Plaintiff's abnormalities are not work preclusive. (Doc. 10 at 10). He states that the ALJ erred because Dr. Lace's limitations "were found to be work preclusive per vocational testimony at the hearing." (*Id.* (citing R. at 1845–49)). The record Plaintiff cites does not support his contention. Rather, the vocational expert said that verbal outbursts usually require a "written warning with an opportunity to improve." (R. at 1848). During the hearing, Plaintiff's attorney—not the vocational expert—said that Plaintiff's impairments are work preclusive. (*Compare* R. at 1845 (vocational expert concluding there are positions that allow an individual to have no contact with the public as part of their job duties) *with* R. at 1849 ("So I'm hoping that any of those either individually or in combination are included which will be work preclusive for [Plaintiff].")). It is clear the ALJ found Dr. Lace's limitations were not work preclusive, and his conclusion is supported by the record. The Undersigned declines to find otherwise, especially where Plaintiff's own citation does not support his assertion.

***

17

Ultimately, the fact that there may be evidence in the record that supports a different result does not mean that the ALJ's findings are not supported by substantial evidence. *See, e.g., Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."); *see also Smith v. Comm'r of Soc. Sec.*, No. 1:14-CV-746, 2015 WL 9467684, at *7 (S.D. Ohio Dec. 2, 2015) ("[T]he evaluation of whether substantial evidence exists does not involve deciding whether this Court would have reached a different decision based upon any singular piece of evidence."), *report and recommendation adopted*, No. 1:14CV746, 2015 WL 9460280 (S.D. Ohio Dec. 28, 2015). Remand is not required where, as here, the ALJ explained his decision and substantial evidence supports the determination.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

18

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: April 16, 2026                              *s/* Kimberly A. Jolson
                                                  KIMBERLY A. JOLSON
                                                  UNITED STATES MAGISTRATE JUDGE